**STATE of Missouri ex rel. Minnette BAUMBACH, Relator,**

v.

**The Honorable Gary A. KAMP, Respondent.**

No. 20582.

Missouri Court of Appeals, Southern District, Division Two.

April 18, 1996.

Donald Rhodes, Bloomfield, for relator.

Julia C. Dolan, Crader, Crader & Dolan, Sikeston, for respondent.

---

## ORIGINAL PROCEEDING
## IN MANDAMUS

CROW, Judge.

The dispute in this original proceeding in mandamus is whether Relator, Minnette Baumbach, is entitled to a jury trial and a change of venue in a matter pending in the Probate Division of the Circuit Court of Scott County ("the probate court"). We preface our discussion of those issues with an account of the pertinent facts.

On July 13, 1994, the probate court found Relator "totally disabled and totally incapacitated." [1] On June 21, 1995, Relator filed a "Petition for Restoration" in the probate court.[2] We gather from the parties' pleadings and briefs in this mandamus proceeding that the petition of June 21, 1995, sought an adjudication that Relator had been "restored to [her] capacity [and] ability." *See:* § 475.083.1(2).[3] We henceforth refer to the petition of June 21, 1995, as "the restoration petition."

Simultaneously with the filing of the restoration petition, Relator filed an "Application for Change of Judge and Change of Venue," together with a "Demand for Jury Trial." [4] On July 21, 1995, the judge of the probate court denied the application for change of venue and the demand for jury trial, but granted the application for change of judge. Respondent, The Honorable Gary A. Kamp, an associate circuit judge of Cape Girardeau County, was ultimately assigned to "hear this cause."

Relator thereafter renewed her effort to obtain a change of venue and a jury trial. The parties disagree on the details of that effort.

Relator avers she "orally moved" Respondent to set aside the July 21, 1995, order of the predecessor judge. Respondent alleges Relator's lawyer, during a "telephone conference call" October 3, 1995, "requested a setting," whereupon Respondent "requested that both parties prepare and forward trial briefs on the issues."

Be that as it may, the probate court's case history sheet displays the following entry dated October 24, 1995:

"Judgment filed sustaining the Respondent's oral motion to set aside ruling. the [sic] Court thereafter takes up the Respondent's request for Jury Trial and Change of Venue and denies the same."

In endeavoring to grasp the import of that entry, we are mindful that Relator was designated "Respondent" in the probate court. § 475.075.1. Whether the entry was accompanied by the simultaneous filing of a separate "Judgment" is consigned to speculation.[5] If the effect of the entry was to vacate the July 21, 1995, order of the predecessor judge, we are left to ponder why Respondent did so when he immediately made rulings identical to those of July 21, 1995.

Relator reacted to the entry of October 24, 1995, by filing a petition for a writ of mandamus in this court, praying us to order Respondent to grant Relator's demand for jury trial and her request for change of venue.

We issued a preliminary order in mandamus commanding Respondent to take no further action regarding the restoration petition until further order from us. Respondent filed a timely answer, and both parties thereafter filed briefs.[6]

We begin with the question of whether Relator is entitled to a jury trial. In *State ex*

---

1. That finding appears on the probate court's "case history sheet." An entry on that sheet dated August 1, 1994, shows: "Adjudication of Incapacity and Disability filed." Neither side has furnished us a copy of that document.

2. That filing is shown on the probate court's case history sheet. Neither side has furnished us a copy of the petition.

3. References to statutes are to RSMo 1994 except where otherwise indicated.

4. Again, we glean this information from the probate court's case history sheet and the parties' pleadings and briefs in this mandamus proceeding. Neither side has furnished us a copy of any document filed in the probate court June 21, 1995.

5. Neither side has furnished us a copy of any "Judgment" filed October 24, 1995.

6. Respondent's answer and brief were filed by the lawyer representing Relator's "Co–Guardians and Co–Conservators" in the probate court.

*rel. Shaul v. Jones,* 335 S.W.2d 468, 474[10] (Mo.App.1960), we find:

"[M]andamus lies to compel a trial judge to grant a jury trial when a party is entitled to it as a matter of right and it has been denied."

Appointment of (1) guardians for incapacitated persons and (2) conservators for disabled persons is governed by chapter 475, RSMo. Definitions of those terms appear in § 475.010.

The procedure for determining whether a person is incapacitated or disabled is spelled out in § 475.075, which provides, in pertinent part:

"1. ... when a petition for the appointment of a ... guardian or conservator against any person, hereinafter referred to as the respondent, is filed on grounds other than minority, the court, if satisfied that there is good cause for the exercise of its jurisdiction, shall promptly set the petition for hearing.

. . . .

3. Upon the filing of a petition under the provisions of subsection 1 of this section ... the court shall immediately appoint an attorney to represent the respondent in the proceeding. The attorney shall visit his client prior to the hearing. If the client is capable of understanding the matter in question or of contributing to the advancement of the client's interest, the attorney shall obtain from the client all possible aid. If the disability of a client compels the attorney to make decisions for the client, the attorney shall consider all circumstances then prevailing and act with care to safeguard and advance the interests of the client.... The court-appointed attorney may be permitted to withdraw if the respondent employs private counsel who enters an appearance on behalf of said person.

. . . .

8. The respondent shall have the following rights in addition to those elsewhere specified:

. . . .

(2) The right to have a jury trial;

. . . ."

It is clear from the above statute that where one person seeks an adjudication that another person is incapacitated or disabled, the latter person is entitled to a jury trial. However, that is not the situation in the underlying case. The restoration petition pending before Respondent seeks an adjudication that Relator is no longer incapacitated or disabled, but instead has been restored to capacity and ability.

Relator, as we understand her brief, maintains that § 475.075.8(2), *supra,* grants her a right to trial by jury on the restoration petition identical to the right specifically granted by that statute to a person against whom another person seeks an adjudication of incapacity or disability. Relator's brief states:

"[Section] 475.075.8 provides a 'bill of rights' for respondents in incapacity or disability proceedings, and affords such respondents the right to a trial by jury. A proceeding to restore one to legal capacity is one form of incapacity or disability proceeding, and as such, in a proceeding to restore one to legal capacity, the ward has the right to a trial by jury."

Disputing that contention, Respondent's brief asserts, *inter alia,* that § 475.075.8(2) does not entitle Relator to trial by jury on the restoration petition because that statute applies only to "the initial incapacity proceeding and not a subsequent petition for restoration filed to restore the [incapacitated or disabled person] to capacity [or ability]."

The issue thus framed by the parties' briefs is whether the right to trial by jury granted in § 475.075.8(2) expires once a person is adjudicated incapacitated or disabled, or whether the right survives that adjudication and applies when such person seeks an adjudication that his or her incapacity or disability no longer exists.[7]

---

7. Relator does not claim any provision of either the Constitution of the United States or the Constitution of Missouri grants her the right to trial by jury on the restoration petition, hence we need not consider that possibility.

In seeking the answer to that question, we note that in § 475.082, the General Assembly recognized that incapacity or disability may not be permanent. That section provides, in pertinent part:

"1. At least annually, the court shall inquire into the status of every ward and protectee under its jurisdiction for the purpose of determining whether the incapacity or disability may have ceased....

....

4. If there is an indication that the incapacity or disability of the ward or protectee has ceased, the court shall appoint an attorney to file on behalf of the ward or protectee a petition for termination of the guardianship or conservatorship or for restoration.

...."

"Ward," as used in § 475.082.1, above, means an incapacitated person for whom a guardian has been appointed. § 475.010(18). "Protectee," as used in § 475.082.1, above, means a person for whose estate a conservator has been appointed. § 475.010(15).

The General Assembly also decided that a ward or protectee need not wait for the probate court to carry out its statutory duties under § 475.082, above. In § 475.083, we find this:

"1. The authority of a guardian or conservator terminates:

....

(2) Upon an adjudication that an incapacitated or disabled person has been restored to his capacity or ability;

....

4. At any time ... the ward or protectee individually may petition the court to restore the ward or protectee ... except that if the court determines that the petition is frivolous, the court may summarily dismiss the petition without hearing.

....

6. Upon the filing of a petition without the joinder of the guardian or conservator, the court shall cause the petition to be set for hearing with notice to the guardian or conservator. If the ward or protectee is not represented by an attorney, the court shall appoint an attorney to represent the ward or protectee in such proceeding.... Such a petition may not be filed more than once every one hundred eighty days.

7. At any time the guardian or conservator may petition the court to increase his powers. Proceedings on the petition shall be in accordance with the provisions of section 475.075."

Respondent emphasizes that § 475.083, above, says nothing about jury trials in restoration proceedings. Consequently, reasons Respondent, such statute "excludes the right to a jury trial in restoration hearings." According to Respondent:

"It is clear that the legislature intended in drafting Chapter 475 of the 1983 Probate Code that the [judge of the probate] court have the exclusive jurisdiction to determine whether a disabled person has been restored to his capacity or ability."

Our research reveals that a right to trial by jury in a restoration proceeding existed in Missouri as early as 1835. Section 39 of a chapter entitled "Insane Persons" in RSMo 1835 reads:

"If any person shall allege in writing, verified by oath or affirmation, that any person declared to be of unsound mind has been restored to his right mind, the court by which the proceedings were had, shall cause the facts to be enquired into by a jury."

The right to trial by jury in a restoration proceeding continued without interruption in subsequent revisions up to RSMo 1978. *See:* § 5823, RSMo 1879; § 5549, RSMo 1889; § 3689, RSMo 1899; § 519, RSMo 1909; § 489, RSMo 1919; § 493, RSMo 1929; § 492, RSMo 1939; § 458.530, RSMo 1949; § 475.360, RSMo 1959; § 475.360, RSMo 1969; § 475.360, RSMo 1978. The 1978 version read:

"For and on behalf of any person previously adjudged to be incompetent or of unsound mind by any court in the state of Missouri, there may be filed in the probate division of the circuit court of the county wherein he was adjudged incompetent or of unsound mind, a petition in writing, verified by oath or affirmation, alleging that subsequent to such adjudication he

has fully recovered his mental health and been restored to his right mind and is now capable of managing his affairs, and the court wherein the petition is filed shall hold an inquiry as to the mental condition of the person in whose behalf the petition is filed. If the court, upon the inquiry, finds that the person is not restored to his right mind, and such person, or anyone for him, within ten days after such finding, files with the court an allegation in writing, verified by oath or affirmation that the person is of sound mind and is aggrieved by the action and finding of the court, *the court shall then cause the facts to be inquired into by a jury.*" (Emphasis added.)

Section 475.360, RSMo 1978 (above), was repealed by Laws of Missouri 1983, H.C.S.S.C.S.S.B. 44 and 45, pp. 804–906 ("the 1983 Act"), which simultaneously enacted a multitude of statutes including those that are now §§ 475.075–.083.

As we have seen, the present statute governing the procedure for determining whether a person is incapacitated or disabled is § 475.075, which specifically provides that the person against whom the adjudication is sought shall have the right to a jury trial. § 475.075.8(2). The present statute governing restoration proceedings is § 475.083 which, as noted earlier, says nothing about jury trials in such proceedings.

In support of his belief that jury trials are no longer authorized in restoration proceedings, Respondent emphatically points out that § 475.083.4, as originally enacted in 1983, read:

"At any time the guardian, conservator or any person on behalf of the ward or protectee may, individually or jointly with the ward or protectee, petition the court to restore the ward or protectee, or to decrease the powers of the guardian or conservator."

Respondent correctly observes it was not until 1992 that the General Assembly enacted the current version of § 475.083.4 (quoted in part *supra* ), which allows a ward or protectee, individually, to file a petition for restoration. Laws of Missouri 1992, H.B. 903, pp. 1110–11. That enactment also granted the probate court power to "summarily dismiss"

such a petition without a hearing if the court determines the petition is frivolous.

Respondent also directs us to subsection 7 of § 475.083, *supra,* which provides that if a guardian or conservator petitions a probate court to increase his powers, the proceedings "shall be in accordance with the provisions of section 475.075." Respondent asserts that had the General Assembly intended that the right to a jury trial conferred by § 475.075.8(2) apply when a ward or protectee petitions for restoration, the General Assembly would have added a provision to subsection 6 of § 475.083 similar to the provision in subsection 7 of § 475.083, referred to in the preceding sentence.

Respondent maintains that the General Assembly, commencing with the 1983 Act, demonstrated a legislative intent that "the right to a jury trial not be granted in petition for restoration actions."

Neither side cites, and we have not found, a Missouri case deciding whether a ward or protectee, since the 1983 repeal of § 475.360, RSMo 1978, has a right to trial by jury in a restoration proceeding. However, the Supreme Court of Missouri had occasion to discuss the right to trial by jury conferred by § 475.075.8(2) in a 1986 decision, *In re Link,* 713 S.W.2d 487 (Mo. banc 1986).

In *Link,* an elderly woman was adjudicated incapacitated and disabled by a judge. *Id.* at 491. On appeal, one of the woman's claims of error was that she did not waive her right to trial by jury conferred by § 475.075.8(2).

The Supreme Court of Missouri reversed the adjudication of incapacity and disability and remanded the case for a new trial. *Id.* at 498. In doing so, the Court said:

"In 1983, the legislature ... provided a 'bill of rights' for the respondent in a competency or disability hearing. Included among the rights enumerated is the right to a jury trial. . . .

. . . .

We believe that the language chosen by the legislature in § 475.075 reflects a legislative intent to provide greater protection

for the rights of alleged incompetents than previously existed under Missouri law."

*Id.* at 492, 494.

The Supreme Court then addressed the issue of whether the appellant had waived her right to a jury trial, saying:

"[T]he characterization of a proceeding as 'civil' or 'criminal' does not necessarily determine which procedural rules apply. From a constitutional perspective, the question turns on the interests at stake for the affected individual. From a statutory perspective, the answer depends on what the statute requires when construed to effectuate the legislative intent. These perspectives join to yield the conclusion that § 475.075.8 requires that the right to a jury trial be waived affirmatively, on the record, and in a fashion similar to waiver under Criminal Rule 27.01. While the statute does not specifically call for the application of criminal procedural rules, we believe that these more stringent requirements are not only more appropriate, but were intended by the legislature."

*Id.* at 495[4].

The Supreme Court held the purported waiver by the appellant of her right to trial by jury in *Link* "did not meet the requirements of § 475.075 or the due process guarantee of the Fourteenth Amendment." *Id.* at 498.

Had *Link* involved a petition for restoration under § 475.083 instead of a petition for an adjudication of incapacity and disability under § 475.075, it would be dispositive of the jury trial issue here. However, as underscored by Respondent, *Link* presents no issue under § 475.083. Consequently, *Link* is helpful only insofar as it aids us in discerning the intent of the General Assembly in enacting §§ 475.075–.083. On that subject, *Link* explains:

"It is presumed that the legislature was aware of the interpretation placed upon existing statutes by the courts, and that in amending a statute, the intent was to effect some change in the existing law."

*Id.* at 493.

As recounted earlier, for 148 years prior to the 1983 Act, § 475.360, RSMo 1978, and its predecessors provided for trial by jury in restoration proceedings. The 1983 Act repealed § 475.360, RSMo 1978. The statute in the 1983 Act governing restoration proceedings, § 475.083, makes no provision for trial by jury in such proceedings. The only reference to a jury trial in § 475.083 is in subsection 7, which pertains to petitions by guardians and conservators to increase their powers. Where such petitions are filed, subsection 7 of § 475.083 specifically provides that the proceedings shall be in accordance with § 475.075 (where, as we have seen, subsection 8(2) provides for a jury trial).

We therefore have, on one hand, a finding by the Supreme Court of Missouri in *Link* that § 475.075 in the 1983 Act manifests a legislative intent to provide greater protection for the rights of alleged incompetents than previously existed under Missouri law. 713 S.W.2d at 494. We have on the other hand a repeal of § 475.360, RSMo 1978, by the 1983 Act simultaneously with enactment of § 475.083 governing restoration proceedings. Section 475.083 not only fails to provide for jury trials in such proceedings, but also specifically provides in subsection 7 that where guardians and conservators petition to increase their powers, the proceedings shall be governed by § 475.075 (the only statute granting a right to trial by jury). The subsection 7 proviso accentuates the absence of a similar one regarding restoration proceedings. Accompanying those factors is the presumption that the General Assembly, in amending a statute, intends to effect some change in the existing law. *Link*, 713 S.W.2d at 493.

The factors in the preceding paragraph are among those we must weigh in determining whether the General Assembly, in the 1983 Act, intended to abrogate the right to trial by jury in restoration proceedings that had existed since 1835.

Besides *Link*, Relator cites *Cannon v. Muller*, 724 S.W.2d 321 (Mo.App.W.D.1987); *Matter of Jessee*, 744 S.W.2d 514 (Mo.App. W.D.1988), and *Clark v. Fitzpatrick*, 801 S.W.2d 426 (Mo.App.W.D.1990). None is helpful. *Cannon* and *Jessee* are appeals from adjudications of incapacity and disability, not appeals from denials of petitions for

restoration. *Clark* presents no issue regarding an adjudication of incapacity or disability, nor does it involve a petition for restoration. It is a suit about property of a deceased person who was once adjudicated incompetent and later restored to competency per a jury verdict. 801 S.W.2d at 427. The verdict was returned December 19, 1981, while § 475.360, RSMo 1978, was still in effect.

The only case cited by Respondent besides *Link* is an opinion of the Eastern District of this Court, as yet unpublished, addressing a dispute about whether the public administrator should be appointed successor guardian and conservator. The opinion says nothing about restoration to capacity or ability.

Our search for the General Assembly's intent led us to the following statement in Vol. 4A, Missouri Practice, Probate and Surrogate Laws Manual (1995), p. 2, authored by John A. Borron, Jr., Judge of the Probate Division, Circuit Court of Jackson County:

"[I]n cases of first impression, involving the construction of a statute having no legislative antecedent, the Committee Comment is virtually the only source for ascertaining legislative intent."

The Committee Comment about § 475.083 is found in Vol. 4B of the above Missouri Practice series at page 86. It reads, in part:

"This section is designed to replace Sec. 475.360 RSMO 1978."

The Committee Comment is followed by an "Author's Comment." There, we learn that prior to the 1983 Act, the ward, himself, could petition for restoration. *Id.* at 89. The comment continues:

"Based upon the experience of several probate judges who had encountered numerous multiple frivolous petitions filed by wards, the Drafting Committee, in reshaping V.A.M.S. § 475.083.4, excluded the ward/protectee from those persons eligible to petition for restoration. This was done on the theory that, pursuant to the least restrictive environment principle, if it became apparent to the court that restoration was appropriate, if no one else petitioned therefor on behalf of the ward, the court could, on its own motion, initiate a restoration inquiry. V.A.M.S. § 475.082.4.

In 1992, V.A.M.S. § 475.082.4 was amended to provide that a ward or protectee may file a petition for restoration. In order to meet the objections that such standing will result in repeatedly fruitless petitions by wards who are incapable of restoration, the statute provides that if the court determines that the petition is frivolous, the court may summarily dismiss the petition without hearing.

. . . .

The 180 day limitation contained in V.A.M.S. § 475.083.6 was also reflective of judicial concern to discourage the filing of frivolous petitions."

*Id.* at 89–90.

We readily infer that the Committee Comment and the Author's Comment reflect the intent of those who *drafted* the 1983 Act. Whether those comments reflect the intent of the General Assembly in enacting the 1983 Act is not so apparent. However, in *Silvey v. Rosenauer,* 814 S.W.2d 680, 682 (Mo.App. W.D.1991), the court looked to a committee comment regarding a section of the Uniform Probate Code from which a section of the 1983 Act was taken, endeavoring to ascertain the purpose of the latter section.

We have also looked in Vol. 5B, Missouri Practice, Probate Law and Practice (1992), also authored by Judge Borron, where a portion of page 498 reads:

"The 1955 Probate Code statute provided initially for a bench trial of the question of restoration. However, if the court found the ward not restored to his right mind, and the ward, or anyone for him, within ten days after such a finding, filed with the court an allegation in writing, verified by oath or affirmation, that the ward was of sound mind and was aggrieved by the finding of the court, the court had to cause the facts to be inquired into by a jury. The revision does not affirmatively give the ward the right to a jury trial in connection with a restoration proceeding. It must be concluded, therefore, that there is no right to a jury trial in connection with such a proceeding. The theory supporting a bench trial lies in the statutory mandate to the court to apply

the least restrictive environment principle and the direction imposed upon the court to initiate a restoration proceeding if there is an indication that the incapacity has ceased." (Footnotes omitted.)

Having found no other clue as to whether the General Assembly, in the 1983 Act, intended to abrogate the right to trial by jury in restoration proceedings, we have concluded, reluctantly, that the General Assembly intended to do so.

We have not ignored the finding by the Supreme Court in *Link* that the General Assembly, in § 475.075 of the 1983 Act, intended to provide greater protection for the rights of alleged incompetents than previously existed under Missouri law. 713 S.W.2d at 494. However, § 475.075 governs only the procedure when someone seeks an adjudication that someone else is incapacitated or disabled. Section 475.075 does not mention restoration. Section 475.083 governs restoration.

Providing enhanced protection in § 475.075 to ensure that no one will be wrongly adjudicated incapacitated or disabled is not inconsistent with an intent to deny a jury trial later, after such an adjudication, when the ward or protectee seeks restoration. Indeed, denying jury trials in restoration proceedings is consistent with the provisions of § 475.083 aimed at preventing probate courts from becoming bogged down by frivolous restoration petitions.

As explained earlier, Relator relies on § 475.075.8(2) to support her demand for trial by jury on the restoration petition. Relator does not argue that § 475.083 confers that right.

Having determined that § 475.075 does not apply to restoration proceedings, which are governed by § 475.083, and having further found that the General Assembly, in repealing § 475.360, RSMo 1978, and replacing it with § 475.083, intended to deny jury trials in restoration proceedings, we hold Relator is not entitled to a jury trial on the restoration petition.

While that may seem harsh, it is up to the General Assembly to set public policy. *Board of Education v. Labor and Industrial Relations Commission,* 633 S.W.2d 126, 133 (Mo.App.W.D.1982). We have no legislative function. *Kavanagh v. Dyer O'Hare Hauling Co.,* 189 S.W.2d 157, 160 (Mo.App.1945).

■ We turn now to Relator's application for change of venue. Relator asserts:

"Respondent acted in excess of his jurisdiction by denying Relator's request for change of venue in Relator's proceeding to be restored to legal competency for the reason that it would be in the best interest of Realtor and her estate to transfer the proceeding to the probate division of another county."

Relator maintains she in entitled to a change of venue by § 475.040, which reads:

"If it appears to the court, acting on the petition of ... a ward over the age of fourteen ... that it would be for the best interest of the ward ... and his estate, the court may order the proceeding ... transferred to the probate division of the circuit court of another county...."

Relator avers Respondent abused his discretion in denying her application for change of venue in that Scott County has failed to protect Relator's rights in several respects including failure to ensure that her co-guardians and co-conservators perform their duties in her best interest, failure to consider Relator's choice for guardian and conservator, and allowing the co-guardians and co-conservators to deplete Relator's estate by paying exorbitant attorney fees. Furthermore, pleads Relator, counsel for the co-guardians and co-conservators has undue influence over the court and the residents of Scott County.

Respondent denies Petitioner's allegations and asserts the co-guardians and co-conservators have acted in Relator's best interest.

■ Mandamus is a discretionary writ, not a writ of right. *State ex rel. Chassaing v. Mummert,* 887 S.W.2d 573, 576[2] (Mo. banc 1994). Mandamus lies only when there is a clear, unequivocal, and specific right. *Id.* at [3]. The right sought to be enforced must be clearly established and presently existing. *Id.* at [4].

The probate court's case history sheet does not show any evidence was presented in sup-

port of Relator's application for change of venue. Consequently, any factual support for the application must be found in probate court records and social service agency memoranda accompanying the pleadings in this mandamus proceeding.

Assuming, without deciding, that we may properly consider those documents, we find them insufficient to establish that Relator has a clear and unequivocal right to a change of venue. While there may be some cause for concern about the performance of Relator's co-guardians and co-conservators, the absence of formal evidence regarding Relator's complaints leaves us unable to hold Relator has clearly and unequivocally demonstrated that a change of venue would be in her best interest. In that regard, we note that if the co-guardians and co-conservators and their lawyer had influence over the predecessor judge—we do not imply they did— that situation has been rectified by the assignment of Respondent, a judge from another county, to the underlying case.

The preliminary order in mandamus is quashed.

PREWITT, P.J., concurs.

PARRISH, J., concurs in result and files concurring opinion.

PARRISH, Judge, concurring.

I concur in the analysis and result reached. My only reason for writing separately is that I do not personally share the reluctance the principal opinion states in concluding that the General Assembly intended to abrogate the right to trial by jury in restoration proceedings.